**People of the State of Illinois, Defendant in Error, v. John Taylor Wilson, Plaintiff in Error.**

**Gen. No. 41,076.**

Opinion filed June 26, 1940.   Rehearing denied July 9, 1940.

MYER H. GLADSTONE and RUSSELL BAKER, both of Chicago, for plaintiff in error.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; JOHN J. PHILLIPS and NATHAN KINNALLY, Assistant State's Attorneys, of counsel.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

By this writ of error defendant, John Taylor Wilson, seeks to reverse a judgment of the county court, which found him guilty of violating the Illinois Securities Act and fined him $1,000. The cause was heard by the court without a jury. He was tried upon the second count of the amended information, which charged:

" . . . that John Taylor Wilson, being then and there an officer and agent of the Chicago Gulf Corporation, a Delaware corporation, the issuer of the securities hereinafter described, did, on, to-wit, the 16th day of September, 1937, at and within the County and State aforesaid, unlawfully sell to J. Harold Lahman forty-one (41) certificates numbered C. O. 1135 to C. O. 1140, both inclusive, C. O. 1204 to C. O. 1207, both inclusive, C. O. 1226, C. O. 1227, C. O. 1233 to C. O. 1239, both inclusive, C. O. 1241, C. O. 1412 to C. O. 1431, both inclusive, and C. O. 3386, said certificates being for thirty-nine hundred (3900) shares of Chicago Gulf Corporation, a Delaware corporation; that the said certificates then and there sold were securities as defined in and by the Illinois Securities Act, approved and in force June 10, 1919, as amended, which securities were then and there unregistered in the office of the Secretary of State of the State of Illinois, in that the necessary statements and documents as required by the provisions of said Illinois Securities Act, as amended, for the purpose of qualifying said securities, had not, prior to said sale, been filed by, for, on or behalf of the issuer of said securities in the office of the said Secretary of State of the State of Illinois, and which sale was not then and there a transaction qualified as exempt under the provisions of Section 5 of said Act, and which securities were

not then and there exempt in and by Section 4 of said Act.''

Defendant was president of the Chicago Gulf Corporation, which was the issuer of the securities involved. The directors of said corporation held a special meeting on December 2, 1936, to discuss and consider its financial problems. It was reported at this meeting that the corporation was in financial difficulties. Its accrued liabilities amounted to $44,387.33 as against its current assets of $5,000 on August 31, 1936, and it required $56,286.11 in cash to meet its payable, fixed and estimated charges for the balance of the year 1936. The following is a portion of the minutes of said meeting.

''The President reported that it is estimated that this corporation will require not less than the sum of $100,-000.00 in cash during the balance of the present calendar year, or shortly thereafter, in order to pay existing liabilities and liabilities which will probably accrue in connection with the Steinberger contract.

''The President further reported that he would purchase for his own account 100,000 shares of the common capital stock of this corporation at $1.00 per share and give to this corporation his collateral promissory note for the sum of $100,000.00, due and payable on or before one year from the date thereof, bearing interest from date at the rate of five (5) per cent per annum until paid, and secured by the deposit of said 100,000 shares of common capital stock of this corporation, with the understanding, however, that he should be permitted to take down on his trust receipt convenient blocks of the shares of the common capital stock of this corporation deposited as collateral security, as aforesaid.

''The President stated that he had either secured for or supplied from his own funds all the money (other than income from the leaseholds) needed and required by this corporation for corporate and other purposes, but that if any member of the Board could suggest a better means for securing said $100,000.00, or any part

thereof, and could secure the same for this corporation, then and in such case he would welcome such assistance.

"No member of the Board suggested either the ways and means of raising said $100,000.00, or any part thereof, on a better basis than proposed by the President, or offered any assistance in that connection."

Pursuant to defendant's proposal the directors adopted the following resolution:

"Now, Therefore, Be It Resolved by this Board in meeting duly assembled, that the proposal of said John Taylor Wilson for the purchase of 100,000 shares of the common capital stock of this corporation at $1.00 per share (said Wilson giving his collateral promissory note for the principal sum of $100,000.00, payable to this corporation on or before one year after the date thereof, with interest at five (5) per cent per annum from the date thereof until paid, secured by said 100,-000 shares of common capital stock of this corporation as collateral security thereto) be and the same is hereby approved, provided however, that said John Taylor Wilson shall have the right and privilege to take down, from time to time, on his trust receipt convenient blocks thereof, and provided further that said John Taylor Wilson shall not sell, exchange or offer for sale said 100,000 shares of the common capital stock of this corporation, all or any part thereof, to any person whomsoever, save and except persons, partnerships, association of persons and corporations exempted under the Illinois Securities Law, unless and until said 100,000 shares of the common capital stock of this corporation is qualified for sale under the Illinois Securities Law; and be it

"Further Resolved that said collateral promissory note and the 100,000 shares of the common capital stock of this corporation deposited as collateral thereto, be lodged with the Vice-President of this corporation, as custodian; the Vice-President being authorized to receive for and on behalf of this corporation all moneys

paid thereon for the account of this corporation, and to deliver to said John Taylor Wilson on his trust receipt convenient blocks of said 100,000 shares of the common capital stock of this corporation from time to time as in his better judgment he deems advisable.''

Shortly after this meeting 99,795 shares of the corporation common stock were issued in defendant's name and delivered to the vice president of the corporation as custodian thereof in accordance with the terms of the foregoing resolution. Defendant withdrew on his trust receipt 19,000 shares of this stock on October 23, 1926, and 28,500 shares on November 6, 1936, or a total of 47,500 shares. The record discloses that 17,470 of these shares of stock had been sold to third persons and transferred on the books of the corporation. 3,900 of the aforesaid 99,795 shares of stock were sold by defendant to the complaining witness, J. Harold Lahman, for cash and certain oil royalty deeds on September 16, 1937. It appears that on October 13, 1937, the defendant with the approval of the board of directors of the Chicago Gulf Corporation canceled his aforesaid $100,-000 note as indicated by the following indorsements thereon:

"October  6, 1937 Credited ............ 17,409.71
October 12, 1937 Credited ............   202.15
October 14, 1937 Credited by transfer of
                 57,395 shs. of Collat-
                 eral at $1.00 per sh.... 57,395.00
October 14, 1937 Balance paid by new
                 note due Sep. 2, 1938.  24,993.14
                                        ─────────
                                        100,000.00''

The bill of sale of September 16, 1937, covering the sale of stock by defendant to Lahman contained the recital ''Four Thousand . . . shares Chicago Gulf Corporation Common Capital stock from the personal holdings of John Taylor Wilson.'' The $5,000 note which Lahman gave defendant in part payment of the

stock contained the recital, "This note secured by 4,000 shares Chicago Gulf Corporation common stock." Shortly thereafter Lahman paid the $5,000 note and defendant delivered 3,900 shares of the stock to him.

It was not only conclusively shown by the evidence but it is conceded that the stock sold by the defendant to Lahman was not qualified for sale under the Illinois Securities Law and it is also conceded that the said stock was not exempt from qualification as class "A" securities under section 4 of such act (ch. 121½, par. 99, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 13.04]).

The sole question presented is whether the State proved by competent evidence beyond a reasonable doubt that the sale of the stock to Lahman by defendant was not exempt under section 5 (1) of the Securities Act. In other words did the amended information properly charge and the evidence show beyond a reasonable doubt that the defendant sold the stock in question as an officer or agent of the issuer for the corporation's benefit and that defendant did not sell the stock as the bona fide owner thereof for his own benefit?

Section 5 (1) of the Illinois Securities Law (ch. 121½, par. 100, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 13.05]) provides as follows:

"Securities in Class 'B', being exempted sales, shall include:

" (1) The sale in good faith and with no intent to defraud of any security by or on behalf of a vendor who is not an issuer, or underwriter thereof, or a dealer or broker, and who, being a bona fide owner of such security, disposes of his own property for his own account and *such sale is not made directly or indirectly, for the benefit of the issuer* or an underwriter of such security, or *for the direct or indirect promotion of any scheme or enterprise with the intent of violating or evading any provisions of this Act.*" (Italics ours.)

It will be noted that in order for a transaction for the sale of unqualified stock to be exempt under this

section of the act, the sale must be made in good faith by or on behalf of the vendor, who, being a bona fide owner of the securities sold, disposes of his own property for his own account. This section affords no protection or exemption from prosecution for the sale of unqualified securities if the sale is made directly or indirectly for the benefit of the corporation which issued the stock or if the sale is made ''for the direct or indirect promotion of any scheme or enterprise with the intent of violating or evading any provision of this Act.'' That the sale was made by the defendant as part of a scheme to deliberately and intentionally violate the provisions of the Securities Act was clearly and conclusively proved by the evidence.

As heretofore shown, the corporation, of which defendant was president, was in such desperate straits that it was necessary to call a special meeting of its board of directors on September 2, 1936, to consider its financial affairs. The corporation needed $100,000 to carry it through the year 1936. It was confronted with the necessity of securing that amount of money. How was it going to get it? The corporation, itself, could not sell the stock because it was not and could not be qualified for sale. The defendant then advanced his proposal, heretofore set forth, which it must be borne in mind was for the purpose of securing funds for the corporation. No other member of the board of directors having offered any other or better plan ''for raising the $100,000'' needed by the corporation, defendant's proposal was approved and 99,795 shares of stock were issued in his name and delivered to the vice president of the corporation as custodian, who was authorized to receive ''all moneys paid thereon for the account of this corporation'' and ''to deliver to John Taylor Wilson on his trust receipt convenient blocks of said 100,000 shares'' from time to time as he requested them. Wilson withdrew 47,500 shares of this stock and sold 3,900 shares of same to Lahman.

The defendant's purchase of this stock from the corporation was only pretended and that he never was the bona fide owner of same is clearly demonstrated by the manner in which he was permitted to cancel his $100,000 note on October 13, 1937. In canceling said note, defendant credited himself with $17,611.86, which he had turned over in cash to the corporate treasurer in payment of 17,470 shares of this stock sold by him and with 57,395 shares of the stock at $1 per share, which he returned to the corporation. He paid the balance of the $100,000 note with a new note for $24,933.14 to cover shares of the stock which had heretofore been withdrawn by him but which he had neither sold nor returned up to the date of said cancellation. The fact that the corporation permitted defendant to return 57,395 of the 100,000 shares of stock supposedly purchased by him and to give a new note for the 25,025 shares still retained by him clearly indicates that his alleged purchase of the stock was a sham and a subterfuge and part of a scheme to foist this unqualified stock on the public in violation of the provisions of the Securities Act.

The recital in the bill of sale to Lahman that the stock sold to him was "from the personal holdings of John Taylor Wilson" and the statement contained in the resolution adopted by the board of directors of the corporation at its meeting on September 2, 1936, "that said John Taylor Wilson shall not sell, exchange or offer for sale said 100,000 shares of the common capital stock of this corporation, all or any part thereof, to any person whomsoever, save and except persons, partnerships, association of persons and corporations exempted under the Illinois Securities Law, unless and until said 100,000 shares of the common capital stock of this corporation is qualified for sale under the Illinois Securities Law" did not render the scheme any the less illegal and criminal. The recital in the one instance and the statement in the other were, in our opinion, merely dis-

guises to mask a deliberate intention to violate the provisions of the Securities Act.

The judgment of the county court should be and it is affirmed.

*Judgment affirmed.*

FRIEND, P.J., and SCANLAN, J., concur.